UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PARALLEL NETWORKS, LLC

      Plaintiff,

v.

BLIZZARD ENTERTAINMENT, INC.,

      Defendant.

C.A. No. 1:13-cv-00826 (RGA)

**REDACTED PUBLIC VERSION**

**DEFENDANT BLIZZARD ENTERTAINMENT, INC.'S BRIEF IN SUPPORT OF ITS
MOTION FOR AN AWARD OF FEES**

Dated:  October 5, 2016

**OF COUNSEL:**

Fred I. Williams
fwilliams@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX  78746
512.542.8400

Todd E. Landis
tlandis@velaw.com
Eric J. Klein
eklein@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201
214.220.7700

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
302.888.6800
kdorsney@morrisjames.com

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS ....................................................4

        A.      Parallel's Original Infringement Contentions Failed To Identify Any
                Plausible Basis For Alleging That Blizzard's Downloader Satisfied The
                "Re-allocating/Re-allocate" Terms. ............................................................4

        B.      Blizzard Put Parallel On Notice That Its Infringement Theory Was
                Baseless. .......................................................................................................5

        C.      Blizzard Made Its Source Code Available, Which Confirmed That
                Parallel's Infringement Theory Was Baseless. ...........................................5

        D.      The Claim Construction Process Confirmed That Parallel's Infringement
                Theory Was Baseless, And Parallel Declined To Stipulate To Non-
                Infringement. ................................................................................................6

        E.      Parallel Then Chose To Engage In Unnecessary Motion Practice
                Regarding Alleged Spoliation Of Documents Relating To A Product No
                Longer Accused Of Infringement. ...............................................................6

        F.      Parallel's Supplemental Infringement Contentions Failed To Identify Any
                Plausible Basis For Alleging That Blizzard's Downloader Satisfied The
                "Re-allocating/Re-allocate" Terms. ............................................................7

        G.      The Court Decided Dueling Summary Judgment Motions....................8

III.    LEGAL STANDARD............................................................................................9

IV.     *OCTANE FITNESS* AND ITS PROGENY CONFIRM THAT THIS CASE IS
        "EXCEPTIONAL." ...........................................................................................11

        A.      Parallel Pursued A Baseless Infringement Theory Regarding The
                "Re-allocating/Re-allocate" Limitations After Claim Construction.........11

        B.      Parallel Litigated This Case In A Vexatious Manner After The *Markman*
                Hearing To Unreasonably Complicate And Increase The Expense Of The
                Case................................................................................................................16

V.      ALTERNATIVELY, BLIZZARD SHOULD BE AWARDED ITS FEES AND
        COSTS UNDER THE COURT'S INHERENT POWER. .................................17

VI.     CONCLUSION...................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Bayer Cropscience AG v. Dow Agrosciences LLC,*
    No. CV 12-256, 2015 WL 1197436 (D. Del. Mar. 13, 2015) .................................. 10

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.,*
    2015 WL 178417 (C.D. Cal. Jan. 6, 2015) ............................................ 11

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991).................................................................. 17

*Eltech Sys. Corp. v. PPG Indus., Inc.,*
    903 F.2d 805 (Fed. Cir. 1990) ....................................................... 11

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994)................................................................... 9

*Lumen View Tech., LLC v. Findthebest.com, Inc.,*
    24 F. Supp. 3d 329 (S.D.N.Y. 2014) ................................................... 10

*MarcTec, LLC v. Johnson & Johnson,*
    664 F.3d 907 (Fed. Cir. 2012) .......................................... 10, 15, 17

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH,*
    603 F.3d 943 (Fed. Cir. 2010) ....................................................... 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    134 S. Ct. 1749 (2014)......................................................... passim

*Parallel Iron LLC v. NetApp Inc.,*
    70 F. Supp. 3d 585, 2014 WL 4540209 (D. Del. 2014) ........................ 10, 17, 18

*Ray v. Eyster,*
    132 F.3d 152 (3d Cir. 1997) ......................................................... 17

*Republic of Philippines v. Westinghouse Elec. Corp.,*
    43 F.3d 65 (3d Cir. 1994) ............................................................ 17

*Taurus IP, LLC v. DaimlerChrysler Corp.,*
    726 F.3d 1306 (Fed. Cir. 2013) ................................................. 13-14

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC,*
    No. CV 12-1285-RGA, 2016 WL 3436396 (D. Del. June 15, 2016) ...................... 10

*Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.,*
    67 F. Supp. 3d 637 (D. Del. 2014).................................................. 3, 15

*Vehicle Operation Techs. LLC v. Ford Motor Co.,*
    No. 13-539-RGA, 2015 WL 4036171 (D. Del. Jul. 1, 2015) ............................ 3, 9

**Statutes**

35 U.S.C. § 285 ................................................................................................ passim

**Rules**

Fed. R. Civ. P. 54(b) ............................................................................................. 9

Fed. R. Civ. P. 54(d)(2)(B)(iii) ............................................................................ 19

Defendant Blizzard Entertainment, Inc. ("Blizzard") respectfully requests that the Court declare this case exceptional and award Blizzard its reasonable attorneys' fees, costs, and other expenses under 35 U.S.C. § 285 or under the Court's inherent power.  Plaintiff Parallel Networks, LLC ("Parallel") should pay Blizzard's reasonable attorneys' fees and expenses because Parallel's patent infringement case was exceptionally meritless once the Court issued its claim construction rulings.

## I.    INTRODUCTION

Parallel has litigated this case with such disregard for the merits that Blizzard should be awarded its attorneys' fees and expenses under § 285 or under the Court's inherent power.  This case "stands out from others with respect to the substantive strength or manner in which the case was litigated." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  Given the weakness of Parallel's infringement allegations and the irresponsible manner in which it continued to litigate the case after the Court's claim construction rulings made clear that Parallel's infringement theory was untenable, this case is truly exceptional.

Parallel had full knowledge that each peer using the accused Blizzard Downloader needed to download 100% of the content to play the game and, therefore, the Blizzard peers did not and could not satisfy the "re-allocating/re-allocate" limitations.   Nonetheless, Parallel continued to pursue litigation.  Parallel's infringement allegations were based on the Blizzard Downloader utilizing a Bittorrent protocol, the basic operation of which is available publicly and sufficient to put Parallel on notice of its shortcomings with respect to the "re-allocating/re-allocate" limitations.  Source code for the Blizzard Downloader was made available for review in November 2014, yet Parallel chose not to review it for months.  Parallel was then put on specific notice of the deficiency in its infringement theory related to the "re-allocating/re-allocate" limitations by March 2015.  Ex. 2.  On April 7, 2015, Parallel reviewed Blizzard's Downloader

source code and was able to confirm the functionality of the Blizzard Downloader and that it did not re-allocate "the cache storage of the content among the peers in the cache community."

Despite the palpable shortcomings in its infringement theory, Parallel proceeded to demand additional discovery, litigate two offensive discovery disputes, undertake the claim construction process and hearing, and litigate dueling summary judgment motions. Even when the Court's claim construction order construed the "re-allocating/re-allocate" limitations as requiring the re-allocation of "the *portions* of the content to be stored by each peer's cache storage," Parallel refused to dismiss the case or stipulate to non-infringement, choosing instead to continue pursuing an indefensible infringement theory that this Court has now found was "fatally flawed." *See* D.I. 162 at 12; D.I. 114 at 2. In fact, Parallel chose to argue that the "re-allocating/re-allocate" limitations were infringed because the download-order of content pieces was purportedly altered by the entry of a new peer to the swarm. D.I. 162 at 11-12. But as the Court found, the use of "portions" in the Court's construction of the "re-allocating/re-allocate" limitations is "important," and the patent requires that "each peer receives some but not all of the content." *Id.* at 12. "To put it succinctly, a reordering is not a reallocation." *Id.* at 14. Because no reasonable plaintiff could have concluded elsewise, Parallel's conduct in maintaining this litigation "stands out from others with respect to the substantive strength or manner in which the case was litigated." *See Octane Fitness*, 134 S. Ct. at 1756.

The key question presented here is whether Parallel's claims were so lacking in merit that it was obligated to stipulate to non-infringement or dismissal after the Court's claim construction ruling. The answer is yes, for all the reasons discussed above. Indeed, this Court has previously found, that these same plaintiff's lawyers' "insistence to litigate [a] matter, even after being apprised by the Defendants that the accused products could not possibly infringe" accentuated

the fact that they "simply turned a blind eye" to the merits of their infringement case. *Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 651 (D. Del. 2014); *see also Vehicle Operation Techs. LLC v. Ford Motor Co.*, No. 13-539-RGA, 2015 WL 4036171 (D. Del. Jul. 1, 2015) (finding case exceptional and awarding attorneys' fees because "any objectively reasonable pre-suit investigation would reveal that the entire action was meritless"). Parallel and its counsel did the same thing in this case.

Even after Parallel's infringement theory was rendered "fatally flawed" at claim construction, *see* D.I. 162 at 12, it aggressively litigated the case and needlessly increased litigation costs. For example, Parallel moved for a spoliation finding—based solely on a product that Parallel would soon confirm was not even accused of infringement in this case. When Parallel at first requested that the Court impose sanctions on Blizzard for alleged spoliation, Parallel's infringement theory sought to cover **all** versions of the Blizzard Downloader, including version 3.0 ███████████████████ D.I. 126. The court may recall that Blizzard Downloader version 3.0 was the only product at issue in Parallel's spoliation motion, because version 3.0 ██████████████████████████████████ Ex. 3 at 54:7-9.

But, faced with the prospect of Blizzard's motion for summary judgment of non-infringement two months later, Parallel changed its infringement theory and no longer accused version 3.0 of any infringement, which calls into question Parallel's true motive in litigating alleged spoliation of data that related solely to an unaccused product. Regardless of Parallel's shifting positions, one fact remained constant and undisputed during all relevant period of the case: the peers using the Blizzard Downloader, regardless of version, requested and received 100 percent of the content and therefore could not infringe under the Court's claim construction.

Parallel's shifting-sands approach to identifying accused products, seeking discovery sanctions, and unreasonably prosecuting the litigation further highlights the case's "exceptional" nature.

Given the substantive positions that Parallel has taken, and the manner in which it litigated this case, particularly after a clear claim construction ruling made non-infringement clear, a finding of exceptional circumstances and an award of attorneys' fees and expenses under 35 U.S.C. § 285 or under the Court's inherent power is warranted.

## II.   NATURE AND STAGE OF PROCEEDINGS

On May 9, 2013, Parallel filed a complaint for alleged infringement of U.S. Patent Nos. 7,188,145 ("the '145 patent") and 7,730,262 ("the '262 patent"). D.I. 1. The Court granted a stay of proceedings pending *inter partes* review of the '145 and '262 patents on February 5, 2014. D.I. 28. After the United States Patent and Trademark Office found the claims of the '262 patent unpatentable, the Court dismissed all claims and counterclaims regarding the '262 patent on June 2, 2015. D.I. 100. On August 7, 2014, the Court lifted the stay, and the case proceeded with regard to the '145 patent. D.I. 39.

### A.   Parallel's Original Infringement Contentions Failed To Identify Any Plausible Basis For Alleging That Blizzard's Downloader Satisfied The "Re-allocating/Re-allocate" Terms.

On December 22, 2014, Parallel served its original infringement contentions for the '145 patent. D.I. 68. In its infringement contentions, Parallel identified that "[t]he Diablo III downloader and all similar installers, downloaders, and/or launchers constitute the Accused Instrumentalities." Ex. 4 at 2. For the "re-allocating" limitation of claim 1, Parallel's infringement contentions alleged that "[t]he Downloader 'allows users to download large files [...] using a peer-to-peer protocol.'" *Id.* at 7. The infringement contentions further alleged that "Blizzard reallocates the cache storage by, for example, storing the requested content on the client's computer as it is downloaded." *Id.* The infringement contentions also stated that "[t]he

Blizzard Downloader is a tool used to download Blizzard game clients." *Id.* at 21, *see also id.* at 4 ("Blizzard directs users to download its online game *Diablo III* via the *Diablo III Downloader*").

The Blizzard Downloader is publicly available and Parallel could have easily obtained a copy and observed its operation, including with respect to the receipt of all of the content. In addition, Parallel's infringement allegations were based on the Blizzard Downloader's use of a peer-to-peer protocol referred to as Bittorrent. The operation of this protocol is publicly available. Therefore, prior to filing suit, Parallel had access to all of the information it needed to confirm whether the Blizzard Downloader provided 100 percent of the content to peers, or whether it allowed peers to cache portions of the content. Tellingly, Parallel's infringement contentions did not contain any allegation that the Blizzard Downloader allowed peers to cache portions of the content.

### B.    Blizzard Put Parallel On Notice That Its Infringement Theory Was Baseless.

On March 27, 2015, the undersigned counsel for Blizzard wrote to Parallel's counsel regarding Parallel's infringement contentions. Ex. 2. Blizzard notified Parallel that the accused Blizzard Downloader did not infringe the "re-allocating/re-allocate" limitations because "content is never allocated let alone re-allocated among peers based upon a new peer joining the cache swarm community." *Id.* at 2. Blizzard also pointed out that "[s]imply downloading content using a peer-to-peer protocol does not satisfy the claim limitation – there must be a re-allocation based on a new member joining the community." *Id.*

### C.    Blizzard Made Its Source Code Available, Which Confirmed That Parallel's Infringement Theory Was Baseless.

In November 2014, Blizzard made its source code available for Parallel's review. *See* D.I. 89 at 1-2. The source code made available included code for the accused game installers

and for the underlying games. *Id.*  On April 7-8, 2015, Parallel reviewed the source code. *Id.*

Parallel reviewed the source code again on October 5-7, 2015. *See* Ex. 5.

> **D.    The Claim Construction Process Confirmed That Parallel's Infringement Theory Was Baseless, And Parallel Declined To Stipulate To Non-Infringement.**

On August 17, 2015, a *Markman* hearing was held. D.I. 111.  The Court construed the

"re-allocating/re-allocate" terms to mean "re-allocating/re-allocate the portions of the content to

be stored by each peer's cache storage." D.I. 114 at 2.  On August 28, 2015, Blizzard again

wrote to Parallel's counsel regarding the baselessness of its infringement case:  "given the

Court's ruling that a new client does not satisfy the asserted claims when it receives 100 percent

of the content in response to joining the community, Parallel has no legitimate basis for

continuing the litigation"—and requested that Parallel stipulate to non-infringement. Ex. 6.

On October 2, 2015, Blizzard again requested that Parallel agree to a stipulation of non-

infringement. Ex. 7.

> **E.    Parallel Then Chose To Engage In Unnecessary Motion Practice Regarding Alleged Spoliation Of Documents Relating To A Product No Longer Accused Of Infringement.**

Instead of stipulating to non-infringement, Parallel chose to multiply the expense of

Blizzard's defense by engaging in unnecessary motion practice.  At Parallel's request, on

September 22, 2015, the Court set a discovery conference for October 19, 2015. D.I. 121.  On

October 1, 2015, Parallel stated that it would stay its discovery motion "if Blizzard agreed not to

seek sanctions" against Parallel and its counsel for their conduct in the case. Ex. 8 (10.1.2015

email exchange).  In response, Blizzard notified Parallel that its conduct "is sanctionable, and

Defendants do not agree to your request that Defendants waive their right to seek sanctions

against Parallel, its counsel, and their law firms.  If Parallel wants to limit its exposure to

sanctions, it should stipulate to non-infringement and appeal the Court's claim construction ruling at this time." Ex. 7 at 2.

On October 15, 2015, Parallel filed its letter brief requesting sanctions against Blizzard for alleged lack of preservation and spoliation of evidence.[1]  D.I. 126.  Parallel's motion was premised on Blizzard's alleged failure to preserve the TrackerLogs for the accused Blizzard Downloader beginning on March 20, 2013.  *Id.*  Blizzard's response was filed on October 16, 2015.  D.I. 128.  On October 19, the Court heard Parallel's request for sanctions.  D.I. 133.

### F.   Parallel's Supplemental Infringement Contentions Failed To Identify Any Plausible Basis For Alleging That Blizzard's Downloader Satisfied The "Re-allocating/Re-allocate" Terms.

On October 30, 2015, Parallel served supplemental infringement contentions.  D.I. 138. The supplemental infringement contentions identified "[t]he Diablo III, Starcraft II, World of Warcraft, and Hearthstone installers, the Blizzard Downloader (**and any 'flavors' thereof**), and all similar installers, downloaders, or launchers are collectively referred to herein as the 'Accused Instrumentalities.'" Ex. 9 at 2 (emphasis added).  For the "re-allocating" limitation of claim 1, Parallel's infringement contentions alleged that "[t]he Downloader 'allows users to download large files [...] using a peer-to-peer protocol.'"  *Id.* at 60.  The infringement contentions conceded that "each peer may end up with all the pieces; that, the entire file that constitutes, for example, a game or update to a game."  *Id.* at 65.  The infringement contentions also disclosed, for the first time, Parallel's infringement theory that the "re-allocating" limitation is satisfied by the re-ordering of the download of the content pieces—"by downloading and caching a particular piece, the Joining Client alters the set of potential pieces from which other peers may download."  *Id.*

---

[1] In connection with Parallel's spoliation motion, Parallel took the deposition of Blizzard engineer Jay Lauffer on October 15, 2015.  Ex. 3. ████████████████████████████████████████████████████████████████████████████████████████████████████

Parallel's supplemental infringement contentions also allegedly removed from the accused products the only version of the Blizzard Downloader (version 3) that was the bases for Parallel's spoliation motion. *See* D.I. 140 at 40-41. Parallel did not receive any new discovery or source code in the interim that might account for this change of position. Instead, it appears Parallel pursued a spoliation motion against Blizzard knowing that the only product version that was the basis for that motion was no longer being accused of infringement.

### G.   The Court Decided Dueling Summary Judgment Motions.

On October 30, 2015, the Court allowed both sides to move for early summary judgment on the "re-allocating/re-allocate" limitations. D.I. 140. Parallel moved for partial summary judgment of infringement on the "re-allocating/re-allocate" limitations. D.I. 151 at 1. Parallel's motion was premised on its new infringement theory that a change in the order of a peer's downloading of the content pieces satisfied the "re-allocating/re-allocate" limitations as a matter of law. *Id.* at 2. In its motion, Parallel conceded that "a client who wanted the Game Package would endeavor to download all of the Pieces." *Id.* at 3.

Blizzard moved for summary judgment of non-infringement. *Id.* Blizzard argued that the "re-allocating/re-allocate" limitations were not infringed by the Blizzard Downloader for the same reasons it had previously made clear to Parallel: because the Blizzard Downloader "did not re-allocate the cache storage responsibilities of each client, as required by the Court's construction. Instead, Blizzard's system provided that each user would receive 100% of the content and that no user would surrender content to another user." *Id.* at 25.

On May 3, 2016, the Court heard oral arguments on the cross-motions for summary judgment. D.I. 161. On August 31, 2016, the Court granted Blizzard's motion for summary judgment of non-infringement. D.I. 162. On September 21, 2016, the Court entered final

judgment of non-infringement in favor of Blizzard. D.I. 170. This motion for fees and expenses timely followed within 14 days. Fed. R. Civ. P. 54(b).

## III.    LEGAL STANDARD

Under § 285, a court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." 35 U.S.C. § 285.[2]  In *Octane Fitness*, the Supreme Court interpreted the term "exceptional" under § 285 as "uncommon, rare, or not ordinary." 134 S. Ct. at 1756. For purposes of awarding attorneys' fees, an "exceptional case" is one that "stands out" in light of the applicable law, particular facts, and manner in which the case was litigated. *Id.* As the Supreme Court explained, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

*Octane Fitness* also clarifies that litigants seeking fees need only show exceptional circumstances under a preponderance of the evidence standard. The Supreme Court directed district courts to determine exceptionality "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* It suggested that the "district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)) (internal quotations omitted).

---

[2] There is no dispute that Blizzard is the prevailing party, as Blizzard's motion for summary judgment of non-infringement has been granted (D.I. 162), Parallel's motion for partial summary judgment has been denied (D.I. 162), and final judgment was entered (D.I. 170). *See, e.g.*, *Vehicle Operation Techs.*, 2015 WL 4036171, at *2 ("[Prevailing] party must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment.").

Unreasonable litigation behavior similar to Parallel's has resulted in the award of fees in other, analogous cases. For example, courts have found a plaintiff's unreasonable disregard of facts that contradicted its infringement theory as a basis for fee awards. *See, e.g., Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. CV 12-1285-RGA, 2016 WL 3436396, at *2 (D. Del. June 15, 2016) (awarding fees when plaintiff continued to assert patent infringement after full notice that disclosed prior art "rendered [plaintiff's] case objectively baseless"); *Bayer Cropscience AG v. Dow Agrosciences LLC*, No. CV 12-256, 2015 WL 1197436, at *4, *8, *9 (D. Del. Mar. 13, 2015) ("Bayer's case, however, became more anemic upon review of each piece of evidence . . . Throughout this litigation, Bayer marched onward with a view of its case that was not supported by its own witnesses . . . The positions Bayer took . . . were directly contradicted by the record evidence Bayer had obtained through early discovery and Bayer should have made every effort to discover before filing suit. The Court is troubled by the fact that, even in the face of contrary evidence from its own witnesses . . . Bayer opposed summary judgment."); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014) (finding a fee award appropriate when plaintiff was put on notice by defendant's counsel of facts undermining plaintiff's infringement theory but the plaintiff continued to be "manifestly unreasonable in assessing infringement").

As another example, courts have awarded fees because of a plaintiff's discovery misconduct. *See, e.g., MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920-21 (Fed. Cir. 2012) (affirming fee award because plaintiff "not only initiated a frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused ... needless litigation expenses"); *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585, 591 (D. Del. 2014) (finding that plaintiff "brought this suit without a good faith basis and then continued

to litigate the case via a misleading and prejudicial litigation strategy"); *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 2015 WL 178417, at *7 (C.D. Cal. Jan. 6, 2015) (awarding fees in part because plaintiff's discovery misconduct, including "unnecessarily dragg[ing] out these discovery proceedings," "strongly suggests harassment and reinforces the conclusion that [plaintiff] litigated against [defendant] in an unreasonable manner").

IV.   *OCTANE FITNESS* AND ITS PROGENY CONFIRM THAT THIS CASE IS "EXCEPTIONAL."

Given the foregoing, this case "stands out from others" as set forth by *Octane Fitness* and subsequent decisions. *First*, Parallel filed and pursued the litigation with meritless infringement theories both before and after the Court's claim construction of the "re-allocating/re-allocate" limitations rendered those theories "fatally flawed." *Second*, Parallel drove up costs with its unreasonable litigation conduct, including filing a spoliation motion regarding a product that it later dropped from the list of accused instrumentalities.  While each of these bases alone support a finding of exceptionality, an award of attorneys' fees is doubly appropriate when considering these facts in totality.

A.   **Parallel Pursued A Baseless Infringement Theory Regarding The "Re-allocating/Re-allocate" Limitations After Claim Construction.**

Even when not originally brought in bad faith, "a case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane*, 134 S. Ct. at 1757.  Here, the Court's construction of the "re-allocating/re-allocate" limitations made it clear that Parallel's infringement case was "fatally flawed." *See* D.I. 162 at 12.  A reasonable plaintiff would have dropped its infringement claims and dismissed the case or stipulated to non-infringement upon receipt of the claim construction order. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) ("The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is

baseless constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285 and awarding costs, attorney fees, and expenses to the accused infringer."). Instead, Parallel concocted a new, equally baseless infringement theory—that altering the order in which content pieces are downloaded constitutes "reallocation." D.I. 162 at 11-12. "[N]o reasonable juror," let alone a reasonable plaintiff, could conclude that reordering is reallocation. *See id.* at 12-13. As the Court properly held, "[t]o put it succinctly, a reordering is not a reallocation." *Id.* at 14.

The frivolity of Parallel's infringement theory is emphasized by the fact that the '145 patent clearly "envisions some degree of divided responsibility for portions of content." *Id.* at 13. In the Background of the Invention, the '145 patent provides that "[o]ne traditional solution to decreasing bandwidth usage" in the prior art involved "caching previously requested content at the user's computer for faster retrieval." Ex. 1 at 1:20-23. In other words, the prior art taught caching 100 percent of the requested content on the user's computer to decrease the bandwidth used and the delay experienced in using a particular piece of content. *See also* D.I. 111 at 115:15-17 ("[I]f each peer had all the data, the invention would face the same problems that existed in the prior art."). The '145 patent then teaches that there was a "need" for "dynamic distributed data caching." Ex. 1 at 1:39-41. And as the Court pointed out, the specification explains that the "[d]ynamic cache application 428 ... reallocates the content 460 to be cached by particular members 412 and master 410 so that the newly added client 404 is responsible for **some subset of content 460** cached in community 402." D.I. 162 at 13 (quoting Ex. 1 at 21:10-13 (emphasis added)).

In addition to turning a blind eye to the express teachings of the '145 patent, Parallel unreasonably ignored the Court's claim construction ruling. At the *Markman* hearing, the Court unambiguously stated that, with respect to the "re-allocating/re-allocate" limitations "each peer

-12-

receives some [portion], but not all of the content." D.I. 111 at 115:12-14. The Court amply explained its reasoning:

> I think the **primary dispute**, which the parties have argued, **is whether each peer can cache 100 percent of the content.** I do not think that each peer can pursuant to the claims. **I think each peer caches a portion of data or the cache content.**
>
> And in the section of the summary of the invention described in the claims, **each peer is associated with a content portion**.

*Id.* at 115:4-12 (emphasis added). Accordingly, the Court construed the "re-allocating/re-allocate" limitations as "re-allocating/re-allocate the portions of the content to be stored by each peer's cache storage." *Id.* at 115:23-116:8.

The Court's claim construction ruling made it clear that a system allowing peers to download 100 percent of the requested content—as the Blizzard Downloader undisputedly did—**cannot** infringe the "re-allocating/re-allocate" limitations. First, the Court's construction provides a limit on the amount of content each peer can cache. As the Court stated, "[t]he use of 'portions' in the construction is important" because it means **less than** 100 percent of the content is stored by the peer's cache. D.I. 162 at 12. Second, the construction focuses on the "portions of content **to be** stored" among peers, looking into the future and the desired download. As Parallel's own expert acknowledged, "'to be' is prospective in nature," and, thus, "require[s] a change in what each peer ultimately seeks to store." *Id.* at 14. Thus, the infringement inquiry must focus on what the peer ultimately downloads, and not on a snapshot of the download process as Parallel's did in its new infringement theory.

Instead of stipulating to non-infringement after the Court's claim construction ruling, Parallel prolonged the litigation by insisting that the parties engage in more discovery, litigate the alleged spoliation issue, and then brief dueling summary judgment motions. This type of conduct properly exposes Parallel to an exceptional case finding. *See Taurus IP, LLC v.*

*DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] case can be found exceptional when a party prolongs litigation in bad faith."); *see also id.* ("While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding, [the Federal Circuit's] decisions in *DePuy Spine* and *Medtronic Navigation* do not undermine the rule that a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."). At all times relevant to this motion, it was undisputed that each user would download and store 100% of the content for any particular download. *See* D.I. 162 at 8, 15 (finding it undisputed that "every BDL client downloads 100% of the game package"); D.I. 151 at 43 (Parallel admitting the same).

It is regrettable that Parallel recognized, but ignored, this fact from the outset of the case. In its original infringement contentions served on December 22, 2014, Parallel cited public information that "[t]he Blizzard Downloader is a tool used to download Blizzard game clients." Ex. 4 at 21; *see also id.* at 4 ("Blizzard directs users to download its online game *Diablo III* via the *Diablo III Downloader*") and 7 ("The Downloader 'allows users to download large files […] using a peer-to-peer protocol."). So Parallel was aware from the earliest stage of the litigation that the game package was not divided among users—because every user received the entire game package. It was also undisputed that each user had to use the exact same amount of storage space for the game package. D.I. 162 at 15. Based on these undisputed facts, the Court found that "a reasonable juror could not conclude that the accused BDL client satisfies the 're-allocating/re-allocate' limitation." *Id.* at 15-16.

Given Blizzard's clear non-infringement of the "re-allocating/re-allocate" limitations, Parallel knew or should have known that its case against Blizzard was meritless at every time

relevant to this motion.   And Blizzard repeatedly informed Parallel that its infringement allegations were meritless.   On March 27, 2015, Blizzard requested that Parallel dismiss its infringement claims because "content is never allocated let alone re-allocated among peers based upon a new peer joining the cache swarm community." Ex. 2 at 2.   Shortly after the claim construction hearing, on August 28, 2015, Blizzard requested that Parallel "agree to a stipulation of non-infringement at this time" in light of the "Court's ruling that a new client does not satisfy the asserted claims when it receives 100 percent of the content in response to joining the community." Ex. 6 at 1. A similar request was made by Blizzard on October 2, 2015. Ex. 7.

Despite multiple opportunities and invitations to abandon its baseless claims and limit Blizzard's cost of defense of a meritless case, *see Vehicle Operation Techs.*, 67 F. Supp. 3d at 651, Parallel's "insistence to litigate this matter, even after being apprised by the Defendants that the accused products could not possibly infringe," highlights that Parallel and/or its counsel turned a blind eye to the futility of their infringement theories.   "The salient inquiry here is whether [Parallel's] claims were so lacking in merit that [it] was legally obligated either to abandon its case altogether or to limit itself to challenging the [Court's] claim construction order on appeal." *See Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010).   Because Parallel's infringement theories on the "re-allocating/re-allocate" limitations were unfounded and baseless throughout, the answer must be **yes**.  As a result, this case "stands out" and is an exceptional one from at least the date of *Markman* hearing on August 17, 2015. *See MarcTec*, 664 F.3d at 919–21 (holding it was litigation misconduct for a plaintiff to "persist[] in advancing unfounded arguments that unnecessarily extended [the] litigation," and that plaintiff's "decision to continue the litigation after claim construction" supported the exceptional case finding).

-15-

**B.      Parallel Litigated This Case In A Vexatious Manner After The *Markman* Hearing To Unreasonably Complicate And Increase The Expense Of The Case.**

Parallel's unreasonable litigation conduct continued after the *Markman* hearing.  As one example, Parallel's infringement theories shifted to mold them to the occasion.  When Parallel wanted the Court to impose harsh sanctions for alleged spoliation, Plaintiff's infringement theory covered **all** versions of the Blizzard Downloader (including version 3.0) that were released before February 2015.  D.I. 126.  ████████████████████████████████ ████████████████████████████—the only potential product at issue in Parallel's spoliation motion was version 3.0.  *See* Ex. 3 at 53:7-9.  But when facing summary judgment of non-infringement, Parallel shifted its theory and no longer accused version 3.0—the only version of the Downloader that provided any possible basis for Plaintiff's spoliation motion—of infringement.  *See* D.I. 151 at 40 ("Parallel accuses Blizzard Downloader major versions 1.0 and 2.0 and all related minor versions and patches … of infringing, but does not accuse Blizzard Downloader major version 3.0 or its minor versions or patches.").  Despite Parallel's fluid positions, one fact remained constant and undisputed:  that the peers using Blizzard's Downloader sought the entire game content and received 100 percent of that content if they remained in the swarm.  Despite this fact, Parallel unreasonably forced Blizzard to litigate the sanctions motion regarding tracker logs related to the non-accused version 3.0 of the Blizzard Downloader.

Parallel's litigation conduct after the *Markman* hearing was reckless in at least the following additional ways:

- It introduced a new, baseless infringement theory after the *Markman* hearing;

- It continued to demand discovery via interrogatories and deposition;

- It opposed the entry of a joint stipulation of non-infringement; and

- It insisted on filing its baseless motion for partial summary judgment of infringement on the "re-allocate" terms.

Courts have cautioned that, when a plaintiff continues a baseless lawsuit and ignores motions and rulings pointing out substantive shortcomings, it does so at its own peril. *See, e.g.*, *MarcTec*, 664 F.3d at 920-21 (Fed. Cir. 2012) (affirming fee award because plaintiff "not only initiated a frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused … needless litigation expenses"); *Parallel Iron,* 70 F. Supp. 3d at 591 (finding that plaintiff "brought this suit without a good faith basis and then continued to litigate the case via a misleading and prejudicial litigation strategy"). Parallel's conduct in this case was similarly perilous and damaged Blizzard.

## V.     ALTERNATIVELY, BLIZZARD SHOULD BE AWARDED ITS FEES AND COSTS UNDER THE COURT'S INHERENT POWER.

In addition to § 285, the Court has inherent power to award attorneys' fees. "[A] court may assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). This remedy serves "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* at 46. "The Supreme Court has recognized the inherent power of courts to impose sanctions in order to manage their own affairs and achieve orderly and expeditious disposition of cases." *Ray v. Eyster*, 132 F.3d 152, 156 (3d Cir. 1997). In addition, "[i]f an attorney, rather than a client, is at fault [for sanctionable conduct], the sanction should ordinarily target the culpable attorney." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

In *Parallel Iron*, this Court reviewed, in detail, its inherent power to award attorneys' fees and the circumstances under which that power may be exercised. 2014 WL 4540209. In that case, the Court awarded attorneys' fees to the defendant after the plaintiff dismissed its case and discontinued the litigation, finding that the plaintiff acted in bad faith, vexatiously, and wantonly "as it brought this suit without a good faith basis and then continued to litigate the case via a misleading and prejudicial litigation strategy." *Id.* at *5.

Parallel's conduct in this case rises to the same level. Parallel's infringement theory on the "re-allocating/re-allocate" limitations was meritless from the start. **Any** good faith analysis of the patent and the accused products would have prompted a litigant in Parallel's position to rethink its plan to pursue an infringement theory of the "re-allocating/re-allocate" limitations based on a supposed re-ordering of the download of the content pieces. Instead, knowing that peers within the Blizzard Downloader downloaded the entire content package, *e.g.*, the requested game, and receiving the Court's construction that the "re-allocating/re-allocate" limitations require that "each peer receives some but not all of the content, Parallel nonetheless maintained the litigation against Blizzard without regard to the merits of its infringement theory. Parallel then forced Blizzard to defend against a spoliation claim for a product that Parallel dropped from the litigation less than two months later. Rather than consider its position after the *Markman* hearing, Parallel continued to drive up litigation costs despite having no legitimate basis for pursuing its new infringement theory.

## VI.    CONCLUSION

Parallel's pursuit of this case based on its baseless infringement theories for the "re-allocating/re-allocate" limitations, especially after the Court's claim construction rulings, was meritless and unreasonable, and sets this case apart from others. For the reasons stated above, Blizzard respectfully requests that the Court declare this case to be exceptional and award

Blizzard its reasonable attorneys' fees and expenses since August 17, 2015.  Under Fed. R. Civ.

P. 54(d)(2)(B)(iii), Blizzard estimates that it has incurred approximately the following fees and

expenses since August 17, 2015 in connection with its defense of this case:

| Fees | Expenses |
|------|----------|
|      |          |

Dated:  October 5, 2016

/s/ Kenneth L. Dorsney
Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
302.888.6800
kdorsney@morrisjames.com

**OF COUNSEL:**

Fred I. Williams
fwilliams@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX  78746
512.542.8400

Todd E. Landis
tlandis@velaw.com
Eric J. Klein
eklein@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201
214.220.7700

*Attorneys for Defendant*
*Blizzard Entertainment, Inc.*