IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARALLEL NETWORKS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BLIZZARD ENTERTAINMENT, INC.,<br><br>Defendant. | Civil Action No. 13-826-RGA |

**MEMORANDUM ORDER**

Pending before the Court is Defendant's Motion for an Award of Fees. (D.I. 174). The issues have been fully briefed. (D.I. 175, 181, 185). For the reasons stated herein, Defendant's motion is **DENIED**.

**I. BACKGROUND**

On May 9, 2013, Plaintiff filed suit against Blizzard and numerous other entities[1] for infringement of U.S. Patent Nos. 7,188,145 ("the '145 patent") and 7,730,262 ("the '262 patent) owned by Plaintiff. (D.I. 1). After hearing oral argument, I denied Plaintiff's motion for partial summary judgment and granted Defendant's motion for summary judgment on August 31, 2016. (D.I. 151, 163). Final judgment was entered on September 21, 2016, and the pending motion was timely filed two weeks later. (D.I. 170, 174). The grant of summary judgment was affirmed by the Federal Circuit. (D.I. 190).

---

[1] The other entities were KOG Games Inc. (C.A. No. 13-178), Nexon America, Inc. (C.A. No. 13-179), OnNet USA Inc. (C.A. No. 13-180), Outspark Inc. (C.A. No. 13-181), Perfect World Entertainment Inc. (C.A. No. 13-182), Riot Games Inc. (C.A. No. 13-183), Turbine Inc. (C.A. No. 13-184), Spotify USA Inc. (C.A. No. 13-808), Kollective Technology Inc. (C.A. No. 13-914), Ignite Technologies Inc. (C.A. No. 13-1083), NC Interactive LLC (C.A. No. 13-1205), Reloaded Games Inc. (C.A. No. 13-827), and SG Interactive Inc. (C.A. No. 13-828).

Defendant contends that this case merits an award of fees because Plaintiff was unreasonable in litigating its case. According to Defendant, Plaintiff's refusal to stipulate to non-infringement after being on notice that its case was meritless and Plaintiff's unnecessary spoliation motions practice make this case exceptional. (D.I. 175, pp. 2-3). Defendant requests that I award fees from August 17, 2015, the date of the *Markman* hearing. (D.I. 175, pp. 18-19). Plaintiff counters that this case is not exceptional and does not merit a fees award, because proceeding with its infringement case was reasonable, and Plaintiff's spoliation motions practice was necessitated by Defendant's unreasonable conduct. (D.I. 181, p. 2).

The parties' briefing identifies three broad issues as relevant to the reasonableness of Plaintiff's continued litigation of this case after the *Markman* hearing: (1) Defendant's destruction of Tracker Log data relevant to Plaintiff's damages theory, (2) Plaintiff's behavior after the *Markman* hearing, and (3) Plaintiff's review of Defendant's source code.

In February 2015, Plaintiff began seeking Tracker Log data from Defendant in order to develop Plaintiff's damages theory, which involved calculating the amount of data served using peer-to-peer technology. (D.I. 181, p. 13; D.I. 182-1 at 5). During Plaintiff's 30(b)(6) deposition of Defendant on August 5, 2015 regarding peer-to-peer efficiency and data issues, Defendant admitted that prior to litigation, Defendant purged Tracker Log files after 30 days as a standard business practice.[2] (D.I. 182-6 at 59 (Lauffer Dep. 32:12-20)). On August 31, 2015, Plaintiff sought agreement from Defendant to stipulate as to the efficiency rate of Blizzard's peer-to-peer data usage and the amount of data served during the relevant time period. (*Id.* at 147-49). The parties could not agree on an appropriate efficiency rate, and did not reach a stipulation. (*See id.* at 142-45). Seven weeks before the close of fact discovery, Plaintiff requested a discovery

---

[2] Defendant maintains that it has preserved Tracker Log data that it had in its possession since the time of Plaintiff's first request for such data in March 2015. (D.I. 182-6 at 142).

conference regarding the Tracker Log data, and the Court scheduled a conference for October 19, 2015. (D.I. 121).

On August 17, 2015, I held a *Markman* hearing, during which I identified the parties' primary dispute about the "re-allocating" term as "whether each peer can cache 100 percent of the content." (D.I. 111 at 115:4-9). I stated that I did "not think that each peer can pursuant to the claims." (*Id.*). One week later, I entered a claim construction order construing "re-allocating/reallocate the cache storage of the content among the peers in the cache community" to mean, "re-allocating/re-allocate the portions of the content to be stored by each peer's cache storage." (D.I. 114).

On August 28, 2015, Defendant wrote a letter to Plaintiff stating that the accused products could not infringe, "given the Court's ruling that a new client does not satisfy the asserted claims when it receives 100 percent of the content in response to joining the community." (D.I. 176 at 73). Five days later, Plaintiff responded,[3] acknowledging receipt of Defendant's letter, providing Defendant with amended infringement contentions, and proposing a stipulation for the parties to pursue early summary judgment. (D.I. 182-1 at 2-3). Plaintiff's proposed stipulation would bifurcate discovery, staying damages discovery and moving forward with discovery relating to liability only. (*Id.* at 2). Plaintiff also indicated its "willing[ness] to work with [Defendant] on some basic stipulations in an effort to avoid unnecessary depositions." (*Id.*). On September 21, 2015, Plaintiff and several defendants had agreed to a modified version of Plaintiff's proposed stipulation.[4] (D.I. 182-6 at 119). The agreed-upon stipulation stayed damages discovery pending the results of early and expedited summary judgment on liability. (*Id.*). Blizzard did not join the

---

[3] Though Plaintiff's letter referred explicitly to Defendant Reloaded Games, Inc., the letter was also sent to counsel for Defendants Blizzard, SGI, KOG, Reloaded, Riot, Kollective, and Turbine. (D.I. 182-1 at 2-3).
[4] Reloaded, SGI, and KOG were the defendants that agreed to Plaintiff's stipulation. (*See* D.I. 182-6 at 119, 121).

3

other defendants in agreeing to this stipulation. (*Id.* at 121). Four days later, Plaintiff renewed its request that Defendant enter into a stipulation that would expedite briefing for early summary judgment as to the "associating" and "re-allocating" limitations only and stay all discovery except technical discovery necessary to the limited summary judgment proceedings. (*Id.* at 124). On October 29, 2015, Plaintiff and Defendant filed a stipulation agreeing to file early summary judgment motions limited to the "associating" and "reallocating" limitations, and agreeing to stay activity on all remaining issues pending the resolution of the early summary judgment motions. (D.I. 139). Fact discovery closed the same day. (D.I. 44, p. 4).

Plaintiff's review of Defendant's source code proceeded in tandem with Plaintiff's efforts to reach a stipulation with Defendant that would expedite resolution of the case. In September 2015, Plaintiff and Defendant spent three weeks negotiating the details of Plaintiff's second review of Defendant's source code. (D.I. 182-1 at 164-71). Plaintiff completed review of Defendant's source code on October 7, 2015, and deposed one of Defendant's corporate representatives eight days later to clarify remaining issues related to Defendant's source code. (D.I. 181, pp. 8, 10-11). On October 26, 2015, Plaintiff served supplemental infringement contentions, which identified "the Blizzard Downloader (and any 'flavors' thereof)" as accused products. (D.I. 138; D.I. 176 at 84). In summary judgment briefing filed on February 23, 2016, Defendant stated that it accused only "Blizzard Downloader major versions 1.0 and 2.0 and all related minor versions and patches" of infringement, "but d[id] not accuse Blizzard Downloader major version 3.0 or its minor versions or patches." (D.I. 151 at 48-49).

I held oral argument on the parties' early summary judgment motions on May 3, 2016. (D.I. 161). On August 31, 2016, I granted Plaintiff's motion for summary judgment, stating that "the problem with Parallel's [infringement] theory" was that "the '145 patent does not require a

4

reallocation 'of the order the [p]ieces will be downloaded;' it requires a reallocation of the 'portions of content to be stored' among the peers." (D.I. 162, p. 14 (brackets in original)).

## II. LEGAL STANDARD

The Patent Act provides that the court "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). When considering whether a case is exceptional, district courts are to exercise their discretion on a case-by-case basis, considering the totality of the circumstances. *Id.* Relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n. 6 (citation omitted). A movant must establish its entitlement to attorney fees under § 285 by a preponderance of the evidence. *Id.* at 1758.

## III. ANALYSIS

Defendant advances two primary arguments that this case is exceptional. First, Defendant asserts that Plaintiff's refusal to stipulate to non-infringement after the *Markman* hearing was unreasonable because my oral ruling and subsequent claim construction order clarified that Plaintiff's infringement theory was baseless. (D.I. 175, p. 2). Second, Defendant argues that Plaintiff's spoliation motions practice was unnecessary, because it concerned documents relating to a product that Plaintiff dropped from the suit two months later. (*Id.* p. 3).

5

Defendant's first argument essentially amounts to an assertion that this case is exceptional because Plaintiff did not dismiss its case quickly enough following my adverse claim construction ruling. Rather than stipulating to dismissal, Plaintiff opted to adjust its infringement theory, supplementing its infringement contentions in that process. (*See* D.I. 138). According to Defendant, between my claim construction order and letters from Defendant advising Plaintiff that the accused products fail to meet the "reallocation" limitation, Plaintiff should have recognized that its infringement case was meritless, and should have stipulated to dismissal and appealed the claim construction to the Federal Circuit. (D.I. 175, p. 15). Given my claim construction and the underlying facts, I cannot say that Plaintiff was unreasonable in supplementing its initial infringement contentions and continuing to litigate the case.

I find reasonable Plaintiff's desire to update its infringement contentions in light of new information provided by my claim construction order and by the completion of Plaintiff's source code review. Plaintiff served its initial infringement contentions in December 2014, well before the *Markman* hearing. (D.I. 68). Plaintiff served its supplemental infringement contentions on October 26, 2015, after completing discovery of Defendant's source code. (D.I. 138). The source code discovery likely provided Plaintiff with additional information relevant to infringement, and Plaintiff acted promptly on that information, serving supplemental infringement contentions within eleven days of completing source code discovery. While it may be easy in hindsight to say that Plaintiff's summary judgment arguments were meritless, particularly in light of the Federal Circuit's affirmance, I cannot conclude, based on the totality of the circumstances, that Plaintiff should have known that they were meritless at the conclusion of the *Markman* hearing, when Plaintiff had not yet completed source code discovery.

Additionally, I do not find Plaintiff's behavior in litigating the suit after the *Markman* hearing consistent with that of a party motivated to drag out litigation to extract a settlement valued below the cost of litigating the asserted claims. Instead, I find Plaintiff's behavior consistent with that of a party having a good faith belief in the merits of its case and seeking prompt resolution. Plaintiff proposed in this case, and in related cases, to engage in early and expedited summary judgment briefing to bring the case to resolution on the merits. (D.I. 182-1 at 2-3). Though Blizzard's counsel received Plaintiff's proposed stipulation to expedite summary judgment briefing at the same time as counsel for several other defendants, Blizzard did not enter into a stipulation with Plaintiff until five weeks after three other defendants had accepted Plaintiff's proposal. (*Id.* at 119, 121; D.I. 139). It seems to me that Defendant bears some responsibility for the delay in resolving the case.

Defendant next argues that the fact that Plaintiff dropped the Blizzard Downloader version 3.0 from the suit shortly after requesting the Court's intervention makes Plaintiff's conduct exceptional because it demonstrates that Plaintiff knew that the Tracker Log data was irrelevant at the time Plaintiff filed its spoliation motion. (D.I. 175, p. 16). I disagree. Even taking as true Defendant's argument that Plaintiff's spoliation motion concerned only the Blizzard Downloader version 3.0, I do not find Plaintiff's pursuit of the motion unreasonable. Defendant places much emphasis on the fact that Plaintiff dropped the Blizzard Downloader version 3.0 from the case seven days after the Court's spoliation hearing, but Defendant neglects to consider the facts of the case as a whole.

Plaintiff first learned of Defendant's destruction of the Tracker Log data that was the subject of Plaintiff's spoliation motion in August 2015. The destroyed data was relevant to Plaintiff's damages theory. Plaintiff sought to avoid the Court's intervention through a proposed

7

stipulation regarding the destroyed data, but the parties were unable to reach an agreement. (D.I. 182-6 at 142-45, 147-49). In early September 2015, Plaintiff proposed a second stipulation to Blizzard and other defendants in related cases that would have stayed all damages discovery pending the outcome of early summary judgment motions. (D.I. 182-1 at 2-3). As the destroyed Tracker Log data was relevant to Plaintiff's damages theory, Plaintiff's September 2015 proposed stipulation, if agreed to by Defendant, would have mooted any need for the Court's intervention in the spoliation dispute. Though several of the other defendants had agreed to Plaintiff's proposed stipulation by September 21, 2015, Blizzard did not agree to the stipulation until October 29, 2015, also the close of fact discovery. On September 22, 2015, with the close of fact discovery approaching and no discovery stay in place, Plaintiff sought my intervention in the spoliation dispute. (*See* D.I. 121). I set a hearing for October 19, 2015. (*Id.*) During the hearing I stated that Defendant was "in the wrong" for destroying Tracker Log data that should have been preserved. (D.I. 133 at 62:11-13). Given the foregoing facts, I cannot fault Plaintiff for bringing its spoliation dispute to the Court.

While Plaintiff was seeking to obtain the Tracker Log data, source code discovery relevant to Plaintiff's infringement theory was ongoing. Plaintiff initially reviewed Defendant's source code in April 2015. (D.I. 181, p. 9). The parties subsequently brought to the Court a dispute about the sufficiency of the code produced for the first review. I ordered Defendant to make all relevant code available for additional review, to pay the travel expenses of Plaintiff's source code reviewer, and to provide a general description of the code.[5] (D.I. 93 at 20:11-21:23, 24:25-25:13). Plaintiff requested its second review of Defendant's source code in early September 2015, and the parties spent three weeks negotiating the details of such review. (D.I. 182-1 at 164-71). Plaintiff

---

[5] Though I expressed my belief that Defendant was not a "bad actor" during the May 2015 source code discovery conference, I also noted that "to the extent there's fault here, the fault is with Blizzard." (D.I. 93 at 25:3-13).

8

completed its second source code review, which included review of code that Plaintiff's consultant had not previously reviewed, on October 7, 2015. (D.I. 93 at 9:15-23, 11:2-8, 20:11-21:23). To resolve remaining source code issues, Plaintiff deposed one of Defendant's corporate representatives on October 15, 2015. (D.I. 181, p. 11). Therefore, by October 15, 2015, Plaintiff had all of the facts relevant to its infringement theory.

Given the foregoing facts, I find unconvincing Defendant's allegation that Plaintiff moved forward with the spoliation conference despite knowing that Plaintiff would be dropping the Blizzard Downloader 3.0 from the case. As of October 19, 2015, the date of the discovery conference regarding spoliation, Plaintiff had been in possession of the totality of source code information relevant to infringement (from the second review and 30(b)(6) deposition) for just four days.[6] Even assuming that Plaintiff began adjusting its infringement theory immediately after the *Markman* hearing, I find it plausible that the results of Plaintiff's second source code review informed Plaintiff's decision to drop the Blizzard Downloader version 3.0 from the case in its supplemental infringement contentions. I cannot fault Plaintiff for taking eleven days to (1) assess the impact of two days' worth of source code review and a subsequent deposition on its infringement case and (2) provide supplemental infringement contentions to Defendant. Nor can I reasonably conclude that in the four days between the deposition and the spoliation conference, Plaintiff had reviewed the source code information in sufficient detail to know, prior to the conference, that it would be dropping the Blizzard Downloader version 3.0 from the case. If anything, the facts support an inference that Plaintiff worked diligently to assess the impact of the newly-obtained source code information, because Plaintiff served supplemental infringement contentions within eleven days of completing its deposition of Blizzard's corporate representative.

---

[6] Had the parties been able to negotiate an earlier date for Plaintiff's second source code review, perhaps Plaintiff would have revised its infringement theory and dropped the Blizzard Downloader version 3.0 from the case earlier.

9

Overall, the facts suggest that Plaintiff engaged in good faith efforts to simplify issues and reduce resources expended in the case while reasonably pursuing a resolution on the merits. I therefore conclude that Plaintiff's conduct does not rise to a level that would make this case exceptional.

### IV. CONCLUSION

For the reasons stated above, Defendant's motion for an award of fees (D.I. 174) is **DENIED**.

IT IS SO ORDERED.

Entered this 7 day of June, 2018.

*[signature]*
United States District Judge